United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

DONNA D. ALLEN,

Plaintiff,

v.

NEIGHBORHOOD HOUSING SERVICES SILICON VALLEY,

Defendant.

Case No.: 12-1656 PSG

**ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**(Re: Docket No. 45)**

In this employment discrimination suit, Defendant Neighborhood Housing Services Silicon Valley ("NHSSV") moves for summary judgment on the claims brought by Plaintiff Donna D. Allen ("Allen"). Having considered the parties' papers and oral arguments, the court GRANTS-IN-PART and DENIES-IN-PART NHSSV's motion.

## I. BACKGROUND

Given the rapidly approaching trial date resulting from the denial of summary judgment for at least two of the claims brought by Allen, as explained below, the court dispenses with the usual recitation of the facts as presented by the evidence each side has presented. The court instead provides only a summary as context for its reasoning for the decisions on each of Allen's claims.

Allen began her at-will employment NHSSV in June 2008, when she was hired by Ed Moncrief ("Moncrief"), NHSSV's executive director at the time, to work as an underwriter and

United States District Court
For the Northern District of California

lending program manager.[1] Moncrief retired in July 2011 and was replaced by Matt Huerta ("Huerta").[2] Huerta fired Allen on or about August 22, 2011 and replaced her with Miriam Maldonado ("Maldonado").[3] According to Allen, her termination was the result of Huerta's discrimination based on Allen's race, color, national origin, age, and disability, and as retaliation for her complaints about his use of profanity in the workplace. In particular, she claims Huerta preferred Hispanic employees and that he commented on numerous occasions about her health after discovering Allen previously had a heart attack. NHSSV responds that Allen was fired because of poor performance.

With this admittedly spare backdrop, the court turns now to the reasons for its determination that while Allen's age, disability, and retaliation claims cannot survive the summary judgment stage, she has presented sufficient evidence to move forward on her race, color, and national origin claims under federal and state law.

## II. LEGAL STANDARDS

Summary judgment is proper if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] The moving party bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a triable issue of material fact.[5] If the moving party meets its initial burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial.[6] A genuine issue for trial exists if there is sufficient evidence for a reasonable jury, viewing the evidence in the light

---

[1] *See* Docket No. 48 Ex. 1 at 23:14-18.

[2] *See id.* at 136:25 – 137:4.

[3] *See id.* Ex. 1 (email exhibit following deposition from Huerta regarding the discharge of Allen and her replacement).

[4] Fed. R. Civ. P. 56(a).

[5] *See* Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[6] Fed. R. Civ. P. 56(e).

United States District Court
For the Northern District of California

most favorable to the non-moving party, to return a verdict for the nonmoving party.[7] If the nonmoving party fails to make the requisite showing, "the moving party is entitled to judgment as a matter of law."[8]

## III. DISCUSSION

### A. Age Discrimination (Claims Two and Count Six)

Neither party disputes that Maldonado was 57 years old at the time she was hired, which was within five years of Allen's age. Under both the Age Discrimination in Employment Act ("ADEA")[9] and California's Fair Housing and Employment Act ("FEHA"),[10] Allen had an obligation to show that she was replaced by a substantially younger employee to establish a prima facie case of age discrimination,[11] given that she offers little other evidence to support her claim. Allen conceded that if Maldonado in fact was 57 years old "summary adjudication of this issue is appropriate."[12] At the hearing, Allen's counsel did not contest Maldonado's age. Taking Allen's suggestion, the court GRANTS summary judgment on her age discrimination claims.

### B. Disability Discrimination (Claims Three and Seven)

Allen asserts that NHSSV through Huerta discriminated against her because of her history of heart disease, specifically a heart attack in October 2010. At the outset, the court notes that Allen admitted in her deposition that she does not consider herself disabled.[13] But she nevertheless

---

[7] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[8] *Celotex*, 477 U.S. at 323.

[9] 29 U.S.C. § 623.

[10] Cal. Gov. Code § 12940(a).

[11] *See Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 917 (9th Cir. 1996) (noting that under both California law and the ADEA, plaintiff must show replacement "by a substantially younger employee with equal or inferior qualifications" as part of prima facie case, although other evidence of discriminatory intent is also admissible).

[12] *See* Docket No. 46.

[13] *See* Docket No. 48 Ex. 1 at 195:24 – 196:1.

may pursue a claim under both the American with Disabilities Act ("ADA")[14] and FEHA[15] if NHSSV mistakenly perceived her to have a disability and then discriminated against her because of that misconception.[16] Because California relies on federal interpretations of the ADA in interpreting FEHA's disability provision,[17] the court addresses here only the law under the ADA but the same reasoning applies to Allen's FEHA claim.

"To establish a prima facie case of disability discrimination under the ADA based upon a perceived disability, [Allen] must prove three elements, specifically that [s]he was (a) 'regarded as' disabled; (b) a 'qualified individual'; and (c) subject to an adverse employment action because of [her] perceived disability."[18] To be "regarded as" disabled, Allen must show either that (1) "a covered entity mistakenly believes that [she] has a physical impairment that substantially limits one or more major life activities," or (2) "a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities."[19] "A substantially limiting impairment is one that prevents a person from performing a major life activity or

---

[14] 42 U.S.C. § 12102.

[15] Cal. Gov. Code § 12940(a), § 12962(l)(3)-(4).

[16] *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (9th Cir. 1999) (overruled by statute on other grounds). Although Allen may have a claim on these grounds, the court notes that the bare allegations in her complaint provide little notice that she is pursuing a perception claim rather than a claim for discrimination based on her actual disability. *See* Docket No. 1 ¶¶ 17, 21 ("Defendant discriminated against Plaintiff because of her history of heart disease in violation of the ADA, 42 U.S.C. §§ 12101, *et seq*" and "Defendant discriminated against Plaintiff because of her history of heart disease in violation of Cal. Gov't Code § 12940(a)").

[17] *See Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 271 (9th Cir. 1996) ("California relies on federal discrimination decisions to interpret the FEHA."); *see also Cassista v. Community Foods, Inc.*, 5 Cal. 4th 1050, 1063 (1993) (relying on federal law to aid in interpreting FEHA).

[18] *Johnson v. City & Cnty. of San Francisco Dept. of Public Health*, Case No. 11-cv-4113 YGR, 2012 WL 4953099, at *6 (N.D. Cal. Oct. 17, 2012) (citing *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996)).

[19] *Sutton*, 527 U.S. at 489.

significantly restricts the condition, manner, or duration of a person's ability to perform a major life activity."[20]

In support of her claim, Allen points to statements she claims Huerta made regarding her health. According to Allen, Huerta stated on three or four different occasions in a sarcastic tone "[w]e don't want Dee to die on the job" and "[w]e need to get her help."[21] Allen testified that she never told Huerta about her heart attack but that she was confident he knew about it because he asked her about it and "commented on it quite a lot," although she cannot remember exactly what he asked.[22]

Huerta's statements do not support an inference that he believed Allen's heart condition was a "substantially limiting impairment," such that he perceived her to be disabled as defined by the ADA. Acknowledging or commenting about an impairment is insufficient, alone, to suggest that an employer believes the impairment is a disability. In fact, based on Allen's description of the statements, Huerta in fact was sarcastic when he made his statements, suggesting that he did not believe she would "die on the job" or that she needed help.

Even if the statements did support an inference that Huerta believed Allen was disabled, she has not shown the requisite causation between that perception and her adverse employment. Nothing in Huerta's statements suggests that he believed Allen was unfit for her work because of her heart condition. His comments may reveal insensitivity to her condition, but absent any evidence from Allen that the statement was in any way connected to an assertion that Huerta believed she was restricted from working, the comment is insufficient at the summary judgment stage. NHSSV's motion for summary judgment of the disability claim is GRANTED.

---

[20] *Johnson*, 2012 WL 4953099, at *6 (citing 29 C.F.R. § 1630.2(j)(l)).

[21] *See* Docket No. 48 Ex. 1 at 201:21-25.

[22] *See id.* at 202:13-20.

**C. Retaliation (Claims Four and Eight)**

In her complaint, Allen alleges that Huerta fired her in retaliation for her complaints about his use of "sexually offensive language in the workplace" in violation of federal and California law.[23] Title VII prohibits retaliation by an employer against employees who complain of treatment that is unlawful under its provisions, namely discrimination on the basis of "race, color, religion, sex, or national origin."[24] To establish a prima facie case of retaliation, plaintiffs must show that: (1) they engaged in protected activity; (2) suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action.[25] The Supreme Court recently held that the standard for causation for Title VII retaliation claims is "but-for" causation – the mixed-motive standard applicable to discrimination claims does not apply.[26]

Protected activity includes filing a complaint, testifying, or assisting in a proceeding under Title VII or FEHA, or opposing any actions made unlawful under the statutes.[27] Allen makes no allegation nor testifies that she engaged in complaints, testimony, or assistance with a Title VII or FEHA proceeding before her discharge. The court thus limits itself to whether her complaints to Huerta suffice as opposition to a practice made unlawful by Title VII or FEHA.

Allen testified that Huerta continually used the word "fuck" in her presence, which offended her.[28] She asserts that on at least one occasion she complained to Huerta about the

---

[23] *See* Docket No. 1 ¶¶ 18, 22.

[24] *See* 42 U.S.C. § 2000e-3(a). Although Allen purports in her complaint to allege retaliation under "said federal statutes," *see* Docket No. 1 ¶ 18, suggesting the ADA and the ADEA are also at play, complaints about "sexually offensive language" are only protected under Title VII.

[25] *See Davis*, 520 F.3d at 1093-94; *Poland*, 494 F.3d at 1179-80.

[26] *See Univ. of Texas SW Med. Ctr. v. Nassar*, --- S.Ct. ---, 2013 WL 3155234, at *14 (2013).

[27] *See* Cal. Gov. Code § 12940(h); 42 U.S.C. § 2000e-3.

[28] *See* Docket No. 45 Ex. A at 207:24 – 208:2, 208:13-18. In her opposition, Allen also asserts that she complained about Huerta's "racial and age harassment," and that she can just amend her complaint to add those claims. *See* Docket No. 46. The court disagrees. Her deadline for amending her complaint under the liberal standard of Fed. R. Civ. P. 15(a) passed on November 5, 2012, the deadline set by the case management order for amendment of her pleadings. *See* Docket

profanity.[29] Allen admitted, however, that he never used profanity at her directly[30] nor did he use the term in a sexual manner.[31] She in fact conceded that she did not find Huerta's use of the term even sexually offensive.[32]

The use of profanity by itself is not an unlawful practice under Title VII or FEHA. The profane language must be so abusive as to alter the working conditions, and it must be driven by a discriminatory motive.[33] Allen has not alleged or in fact provided any evidence that Huerta's profanity was the result of a discriminatory motive. She therefore has not shown that his actions were unlawful under Title VII or FEHA, and so her complaint to him was not a "protected activity" as defined by either statute.

Because she has not made a prima facie showing of retaliation, summary judgment is GRANTED.

**D. Race, Color, and National Origin (Claims One and Five)**

Allen asserts that her termination was the result of Huerta's racial, color-based, and national-origin-based animus towards her. She contends that Huerta fired her because she was a white, Caucasian and because he preferred Hispanic, Spanish-speaking employees.

---

No. 28. She is now subject to Fed. R. Civ. P. 16(b), which requires a good cause showing, notably diligence. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.3d 604, 609 (9th Cir. 1992). Allen makes no showing of diligence and, even if she had, given the stage of this case, her proposed amendment would be unduly prejudicial to NHSSV.

[29] *See* Docket No. 45 Ex. A at 209:4-11.

[30] *See id.* at 207:22 – 208:2.

[31] *See id.* at 213:2-4.

[32] *See id.* at 212:24 – 213:1.

[33] *See Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 81 (1998) (noting Title VII is not a "general civility code" and that language must amount to discrimination "because of . . . sex"); *Lyle v. Warner Bros. Telev. Prod.*, 38 Cal. 4th 264, 273-74 (2006) ("[T]he use of sexually coarse and vulgar language in the workplace is not actionable per se. Rather, we must look to the specific facts and circumstances presented to determine whether the language at issue constituted harassment based on sex within the meaning of FEHA and whether such language was severe enough or sufficiently pervasive to create a work environment that was hostile or abusive to plaintiff because of her sex.").

**United States District Court**
For the Northern District of California

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race."[34] For a claim of racial discrimination, the court applies the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*.[35] "Under this analysis, plaintiffs must first establish a prima facie case of employment discrimination."[36] "If plaintiffs establish a prima facie case, 'the burden of production, but not persuasion, shifts to the employer to articulate some legitimate, non-discriminatory reason for the challenged action.'"[37] "If defendant meets this burden, plaintiffs must then raise a triable issue of material fact as to whether defendant's proffered reasons for their termination are mere pretext for unlawful discrimination."[38]

"To establish a prima facie case, plaintiffs 'must offer evidence giving rise to an inference of unlawful discrimination.'"[39] To do so, plaintiffs may rely on circumstantial evidence showing: (1) "that they are members of a protected class"; (2) "that they were qualified for their positions and performing their jobs satisfactorily"; (3) "that they experienced adverse employment actions"; and (4) "that similarly situated individuals outside their protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination."[40] Although similarly-situated persons outside of the protected class

---

[34] 42 U.S.C. § 2000e-2(a)(1).

[35] 411 U.S. 792 (1973).

[36] *See Hawn v. Exec. Jet Mgmt, Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010).

[37] *Id.*

[38] *Id.*

[39] *Id.* at 1156.

[40] *See id.*

need not be identical to a plaintiff, they must "be similar in all material respects," which "will depend on context and the facts of the case."[41]

Here, Allen makes a prima facie showing.[42] She is Caucasian; she was performing her job satisfactorily, especially in light of Moncrief's evaluation of her performance in both 2008-2009 and in 2010-2011[43]; she suffered an adverse action with her termination; and she has provided evidence that supports an inference of discrimination, notably her claim that Huerta told her he was surprised that Moncrief would hire a Caucasian employee instead of a Hispanic employee for her position[44] and her subsequent replacement by a Hispanic woman who speaks Spanish fluently.[45]

The burden shifts to NHSSV to provide a legitimate, non-discriminatory reason for Allen's discharge. Here, it points to Allen's record of having an abrasive personality and a lunch with a potential business partner at which she purportedly consumed alcohol in violation of NHSSV's policy and acted inappropriately.[46] The burden shifts back to Allen to provide sufficient evidence to create a triable issue of fact that this legitimate, non-discriminatory reason is pretextual.

Considered in the light most favorable to her, Allen has provided sufficient evidence for a reasonable jury to conclude that Huerta was motivated, at least in part, by racial or national-origin-based animus. The court already has described Allen's claim that Huerta expressed surprise that Moncrief hired a Caucasian, non-Spanish-speaking employee for Allen's position. Unlike

---

41 *See id.* at 1157.

42 The court notes that in its motion NHSSV did not argue that Allen failed to make a prima facie showing and in fact barely discussed its "legitimate, non-discriminatory reason." *See* Docket No. 45. Because at the hearing NHSSV asserted that it believed Allen had not made a prima facie showing, the court briefly addresses its reasoning here.

43 *See* Docket No. 48 Ex. 1 (reviews following Allen deposition) (noting that despite communication issues, she was effective at increasing loans and developing a cohesive team).

44 *See* Docket No. 45 Ex. A 189:13-20.

45 *See* Docket No. 48 Ex. 1 (email exhibit following deposition from Huerta regarding the discharge of Allen and her replacement); Ex. 4 (interrogatory disclosing that four an employee hired on the same date and having the same age as Maldonado is "Hispanic").

46 *See* Docket No. 45 Ex. 1 ¶¶ 7, 8.

NHSSV's assertion, this statement is not just a "stray remark."[47] Huerta was the decision-maker regarding Allen's position and his comment reflects sufficient nexus to her eventual termination to support her claim, especially considering that he made the comment at some point within a six-week overlap between his start and Allen's discharge.

Allen's other evidence, though not as strong, nevertheless supports her claim. For example, she asserts that Huerta made at least one sarcastic comment about her skin color that she believes reveals his animus. Huerta disputes the claim, but the credibility of Huerta and Allen is an issue for the jury.

Because a factual dispute exists regarding whether Huerta was motivated by racial, color-based, or national-origin-based animus when he fired Allen, summary judgment is unwarranted.

**IT IS SO ORDERED**

Dated: July 9, 2013

PAUL S. GREWAL
United States Magistrate Judge

---

[47] *See Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998).